UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>NICHOLAS STENGEL, )<br>)<br>Defendant. )<br>_____) | CR. No. 03-000039-01 (CKK)(AK)<br><br>**FILED**<br><br>DEC 2 3 2008<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge by the Honorable Colleen Kollar-Kotelly, for the purpose of addressing the Probation Officer's request to implement additional special conditions of supervised release in a Report and Recommendation.

Background

The Defendant was found guilty of Certain Activities Relating to Material Constituting or Containing Child Pornography, and was sentenced to a period of 41 months incarceration, to be followed by 36 months supervised release, on November 3, 2003. In addition to the standard conditions, the trial court imposed the following 12 special conditions, requiring that Defendant: 1) provide full financial disclosure to the Probation Office; 2) participate in sex offender therapy (including random polygraph examinations at the discretion of the Probation Office); 3) not associate with known sex offenders; 4) not possess or use computers with online computer services, without the prior approval of the Probation Office; 5) have no direct or indirect contact with children 18 or younger; 6) have no employment related to contact with minors; 7) not possess any pornographic material; 8) comply with sex offender registration;

9) not utilize 900 numbers; 10) not own or possess any camera or video recording device without approval of the Probation Office; 11) notify the Clerk of Court, District of Columbia, of any address change within 30 days; and 12) submit a DNA sample. The trial court also imposed a special assessment of $100.00. Supervision began on December 5, 2006, and is scheduled to terminate on December 4, 2009.

Routine polygraph tests which had been included as a condition at the discretion of the Probation Office was imposed and the trial court was so notified by Memorandum to the Trial Court dated August 2, 2007. The memorandum referenced an earlier incident that Mr. Stengel had violated his conditions of supervised release and sought out child pornography, and had masturbated in a public place. [Memorandum to the Trial Court dated June 20, 2007.] By Memorandum to the Trial Court dated October 7, 2008, the supervising Probation Officer advised the trial court of the Defendant's current supervision status and also requested additional special conditions to be made part of Mr. Stengel's supervised release. The request for additional conditions to be added to the existing twelve conditions was precipitated by the results of a polygraph test administered by polygrapher John Patterson on October 25, 2007. In his October 7, 2008, memorandum the Probation Officer noted that the initial test results of that test indicated deception regarding disclosure of deviant sexual acts, using coercion for sexual acts, and contact with a person under the age of eighteen years for sexual acts, and the final report indicated that Mr. Stengal was untruthful during the polygraph examination.

Mr. Stengel is currently participating in sexual therapy at Clinical and Forensic Associates, located in Washington D.C. Dr. Yolanda Segal, a member of this group, attempted to administer a polygraph test to Mr. Stengel on September 24, 2008, but he declined to

participate. He claimed that he was suffering from severe anxiety and that a polygraph test during his period of anxiety would distort the test results. Assurances by Dr. Segal that she could adjust the test to accommodate his anxiety were unavailing and Mr. Stengel continued to resist participating in the test and suggested that he would challenge the ethical practices of Dr. Segal and possibly pursue legal options if she persisted. Dr. Segal, in light of those representations, reported the events to her supervisor, Dr. Weiner who cancelled the polygraph examination. He also decided to change therapists to a different clinical practitioner.

At a meeting held in the Probation Office on September 25, 2008, attended by the Probation Officer, both Mr. Stengel and his wife, and Dr. Segal, Mr. Stengel again expressed his concerns about the polygraph examination and how his level of anxiety affects the accuracy of the test and the measure of his truthfulness. Dr. Segal attempted to temper Mr. Stengel's concerns by explaining that the polygrapher could adjust the test to account for his increased level of anxiety. The assurances of the Probation Officer and Dr. Segal did not convince Mr. Stengel or his wife.

It is the opinion of the supervising Probation Officer that, based on Mr. Stengel's prior inappropriate sexual behavior induced by stress; his failure of the October 25, 2007 polygraph examination given by John Patterson ; and his current unwillingness to participate in the scheduled September 24, 2008, polygraph test, Mr. Stengel poses an elevated risk to the safety of the public. This opinion led to the request for the hearing held before the undersigned and that the Defendant's special conditions of supervision be modified to include: 1) Defendant should not consume any alcoholic beverages; and 2) Defendant be subjected to location monitoring with a Global Positioning System (GPS) for up to a period of 180 days, as directed by the Probation

Office. The Defendant would be required to abide by the detailed instructions regarding specific inclusion or exclusion zones. The Defendant would also be required to pay for the cost of electronic monitoring at the prevailing rate, according to his financial ability, as determined by the Probation Officer.

While the Probation Officer finds that Mr. Stengel's adjustment to supervision has been unsatisfactory, he acknowledges that Mr. Stengel maintains a stable residence in Washington, D.C. and he is currently employed as a Sous Chef at a restaurant located in Arlington, Virginia, where he earns $36,500 per year.

The Probation Officer notes further in his memorandum dated October 7, 2008, that although Mr. Stengel is currently participating in sexual therapy with Clinical and Forensic Associates, he is not in compliance with his treatment based upon his failure or opposition to submit to the scheduled September 24, 2008, polygraph examination. The status report also notes that Mr. Stengel continues to receive individual psychological treatment with a Dr. Shooter to address his diagnosis of depression.

Mr. Stengel complied with the condition that he submit a DNA sample while he was incarcerated at the Bureau of Prisons. His special assessment was paid in full while incarcerated and the Probation Office notes that Mr. Stengel has been compliant with adhering to the sexual offender registration.

### Hearing to Add Special Conditions

A hearing to add additional conditions to the Defendant's supervision was held by the undersigned on November 5, 2008. At the hearing, Defendant was represented by counsel. At the hearing, the Probation Officer reiterated the request of the Probation Office that Mr. Stengel's

conditions of supervision be modified to include location monitoring by means of a Global Positioning System (GPS) for a period up to 180 days, and that the Defendant be directed not to consume any alcoholic beverages.

Prior to the hearing, counsel for the Defendant filed a written response to the request by the Probation Office for modification of Mr. Stengel's conditions of supervised release. Counsel for the Defendant, while noting that he opposed the request of the Probation Office for the two new conditions, and before stating the Defendant's reasons for opposing the Probation Office's request for additional conditions, sought to refute the Probation Office's assertion that Mr. Stengel refused to take a polygraph test. Also, he noted that Mr. Stengel had earlier acquiesced in being subjected to GPS monitoring.

Addressing the allegation that he refused to participate in the scheduled September 24, 2008 polygraph test, Mr. Stengel strenuously objected to the characterization that he refused to take that scheduled polygraph test with Dr. Yolanda Segal. It is the Defendant's position that because he suffers from stress and panic disorder, the scheduled polygraph examination with Dr. Segal exacerbated his stress and he became concerned that his anxiety would affect the accuracy of the examination. A declaration by Defendant's wife, Wendy Stengel, was included in Mr. Stengel's written opposition in which she stated that her husband was concerned about the timing of the polygraph examination scheduled by Dr. Segal and his anxiety level was high because he had changed prescriptions. She also stated that Dr. Weiner had told him that he should never have taken the previous polygraph examination with his anxiety level so high.

With respect to the polygraph examination administered by Mr. Patterson which Defendant allegedly failed, the Defendant argues that the questions posed and answers he gave

related to past events prior to his conviction. He noted that he passed his most recent polygraph examination taken a few weeks prior to the court hearing.

The Defendant argued that he is willing to take polygraph examinations, but sees no reason to have GPS monitoring. The reasons given for the GPS condition are not based on his suspected visits to places where he would have access to pornography or being near children. The criminal actions which led to his conviction took place in his home, and GPS monitoring will not be a restraint to his having access to pornography at home. The Defendant also opposes the condition that he not consume alcohol. He argues that alcohol was not a factor leading to the request for two additional conditions, nor has alcohol or another illegal drug surfaced as an issue. For these reasons, coupled with his compliance with his therapy obligations both as required by the special conditions and his own private psychotherapy, the Defendant objects to the requested two additional conditions.

The Government argued to this Court that polygraph monitoring was necessary not for the purpose of finding out if the Defendant continues to violate the law but solely to ascertain whether the Defendant is lying and if he is, then his therapy programs can be tailored, if needed, to modify and enhance his therapy.

Recommendation

The request of the Probation Office to add two new special conditions to Defendant's existing conditions does not require a finding of violation and the imposition a sanction. The hearing was scheduled to provide the trial court with a current status and the request of the Probation Office for the addition of the two conditions. Because neither the Government nor Mr. Stengel offered live testimony at the Hearing, the undersigned did not conduct an evidentiary

hearing. Rather this Court heard the respective arguments of counsel and the Probation Officer and read the written submission with attachments from Defendant's counsel.

At the conclusion of the arguments, the Probation Officer and the United States both urged the trial court to impose both of the two new proposed special conditions. Defendant, through counsel, urged the trial court not to impose the conditions as unnecessary and burdensome.

Recognizing that the Probation Office argues that it is not seeking polygraph information for the purpose of violating and subsequently sanctioning the Defendant, the undersigned has some concerns with respect to the questions posed to Defendant as part of a mandated polygraph examination that directly or indirectly seeks facts of new criminal activity. Such information, could result in an admission of new criminal conduct and result in an involuntary waiver of the individual's Fifth Amendment rights. However, the Defendant does not object to taking polygraph examinations. The request for GPS monitoring and abstinence from alcohol based upon the supervision conduct of Mr. Stengel, as stated by the Probation Officer, does not appear to be related to any current conduct problems or known conduct that needs monitoring. GPS monitoring will obviously afford the Probation Office the opportunity to know where the Defendant has been, which in and of itself should cause the Defendant to pause before putting himself in or at places where he could violate one or more of his special conditions. However as noted above, the Probation Office presented no reason for the imposition of a tracking condition nor did it suggest that the Defendant had frequented places that would permit him access to child pornography, use of a computer or close proximity to persons below the age of 18 years. Similarly the restriction on his use of alcohol was not based on any actual or perceived abuse or

use of alcohol, or that consuming alcohol would adversely affect the Defendant or prevent him from compliance with the conditions of release. Although the Defendant, through counsel, both orally and in his written submission, objects to the imposition of the two additional special conditions as not supported by his conduct, he also expressed that he would comply with the additional conditions if imposed by the trial court.

December 22, 2008

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE